## THE MERMAID.

(Circuit Court of Appeals, Ninth Circuit. February 3, 1902.)

### No. 676.

**1. SEAMEN—SHIPPING ARTICLES—VALIDITY UNDER STATUTE.**

Under Rev. St. § 4511, which requires shipping articles to state "the nature, and so far as practicable the duration, of the intended voyage or engagement, and the port or country at which the voyage is to terminate," articles for service on a brig from a port in the state of Washington "to ports in the district of Alaska, within the Behring Sea and Arctic Ocean, and also other ports and places in any part of the world, as the master may direct, and back to a final port of discharge in the United States, for a term of time not exceeding six calendar months," are not so indefinite in describing the nature of the voyage as to render them void, in view of the character of the vessel, the length of time required to make the voyage to an Alaskan port and return, and the limit on the term of service.

**2. SAME—FORFEITURE OF WAGES—DESERTION AT SEA.**

Libelant, a seaman who has signed for a voyage to an Alaskan port and return to a port of the United States, before reaching the port of destination, and while at sea, went on board another vessel without leave, where he became intoxicated and refused to return when ordered, and did not thereafter return or offer to return to his service. Held, that his intoxication was no excuse, and that by his desertion he forfeited his wages earned.

Appeal from the District Court of the United States for the Northern Division of the District of Washington.

For opinion, see 104 Fed. 301.

William Hardy, the appellee, libeled the brig Mermaid for wages claimed to have been earned by him as a sailor. On April 2, 1900, he shipped on board the Mermaid, at Port Blakely, in the state of Washington, for ports in Behring Sea. When the brig was within four days' sailing of Cape Nome she ran into the ice, and anchored to an iceberg, in four fathoms of water. Two other schooners were tied up to the same iceberg, and were lashed to the Mermaid for a period of about six hours. On July 20th the appellee, without permission, went from the Mermaid to one of the other schooners, and while there became intoxicated in the forecastle. The iceberg began to kedge, and, the Mermaid being in a dangerous position, all hands were ordered aboard, and all hands obeyed the order except the appellee. The captain of the Mermaid, seeing the appellee on the deck of one of the other schooners, ordered him aboard the Mermaid; whereupon the appellee, in abusive language, refused to come aboard, but remained where he was, and sailed on the schooner to Nome, where he arrived in advance of the Mermaid. The Mermaid reached Nome on July 23d. As soon as she arrived the appellee went out to her where she lay at anchor, and took his clothes away. He testified that he had never intended to desert the brig, that he intended all the time to return to her as a sailor, and that he had that intention when he went to the vessel at Nome, but that before he had time to get up the gangway the mate said to him: "You have done a fine thing. All you can do is to take your clothes out of the ship and go ashore." He does not claim, nor is there any evidence to show, that he then or at any time expressed to any one his intention or desire to go back upon the ship as a sailor.

Richard Saxe Jones, for appellants.

Root, Palmer & Brown, for appellee.

Before McKENNA, Circuit Justice, and GILBERT and ROSS, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The district court held that the conduct of the appellee was not desertion, for the reason that he had not bound himself by signing lawful shipping articles; but the court expressed the opinion that, but for defects in the shipping articles rendering them void, it would not hesitate to declare a forfeiture of the appellee's wages for desertion. We agree with the district court that drunkenness was no excuse for the conduct of the appellee, and that his action in leaving the vessel as he did was desertion. We are unable, however, to concur in the conclusion that the shipping articles are so defective under the law as to be void. They describe the voyage in the following words: "To ports in the district of Alaska within the Behring Sea and Arctic Ocean, and also other ports and places in any part of the world, as the master may direct, and back to a final port of discharge in the United States, for a term of time not exceeding six calendar months." The statute (section 4511, Rev. St.) requires that the shipping articles shall state "the nature, and so far as practicable, the duration of the intended voyage or engagement, and the port or country at which the voyage is to terminate." The articles in question undoubtedly comply with the second and third of these three statutory requisites. They state the duration of the intended voyage, and the country at which it was to terminate. These are obviously the most important features of the contract, so far as it concerned the seaman. They informed him of the length of time of his engagement, and, in a general way, of the

place of his discharge. In describing the nature of the voyage, the terms used in the articles are, it may be conceded, somewhat indefinite, but not so indefinite, we think, as to render the articles void. They state in general terms that the voyage is from Port Blakely, the port whence the vessel cleared, "to ports in the district of Alaska within the Behring Sea and Arctic Ocean," and "back to a final port of discharge in the United States." It is true that there is inserted in the description, in addition to the specified ports of destination, "also other ports and places in any part of the world, as the master may direct," but it was evident to a seaman shipping on a brig from Port Blakely to ports in the district of Alaska in Behring Sea and "back to a port in the United States" that there could not be, within the limit of the specified six months, any very extensive deviation from that voyage. We think the articles gave the seaman the essential information he was entitled to have. It advised him that the vessel was to go to ports in the district of Alaska in the Behring Sea, which could only mean Nome or St. Michaels or some other port within reasonable distance therefrom, and thence to make a return voyage back to some port in the country whence she sailed. We do not think it was the intention of congress in enacting the statute to require owners of sailing vessels engaged in the coastwise trade to specify at the inception of each voyage all the ports at which the vessel might touch, or to deprive the master of the power to exercise a reasonable discretion in touching at other convenient ports, and availing himself of the opportunities afforded by the exigencies of trade. If such had been the intention of the statute, it would undoubtedly have been expressed in terms. All that is exacted is that the nature of the intended voyage be described. We think that the nature of the voyage in this instance was made reasonably clear. The desertion was a desertion at sea. To declare forfeited the deserter's wages is but a light punishment for his act.

The decree will be reversed, and the case remanded, with instructions to dismiss the libel.