**In re Petition of Richard H. LARSON, a member of the crew of THE SS TOMA-HAWK, for the return of wages and personal effects.**

United States District Court
E. D. Virginia,
Norfolk Division.
July 9, 1957.

Sidney H. Kelsey, Norfolk, Va., for petitioner.

William F. Davis, Asst. U. S. Atty., Norfolk, Va., for respondent.

HOFFMAN, District Judge.

Petitioner, a seaman and former member of the crew of the SS Tomahawk, in a turnover proceeding seeks the recovery of his wages and personal effects now in the custody of the Clerk of this Court. The United States of America asserts that the seaman forfeited his rights to same by deserting the vessel at Pearl Harbor, T. H., on or about July 13, 1956. Petitioner urges that his violation is merely one of "failure to rejoin", falling short of the required intention to desert, and suggests his intoxication as the underlying reason for his actions.

Petitioner was serving as quartermaster of the vessel when the ship arrived at Pearl Harbor on July 13, 1956, at 9 A.M. He had joined the Tomahawk in January, 1956, in the United States, and signed articles for a term not exceeding twelve months. Upon arrival at Pearl Harbor, the seaman requested to be paid off, but the master declined and the seaman drew only $50 for his shore leave. While the vessel posted no sailing time upon arrival, petitioner was aware of the fact that 18 hours was the customary time in port required for loading, etc. By reason of the actions of certain crew members, including petitioner, the sailing was twice delayed and the vessel finally departed on July 15, 1956, at 2 P.M.

 The seaman has testified that he "stayed drunk for about three or four days". On the day following the vessel's arrival he states that he returned to the ship with some personal items such as toothpaste, shower slippers and other items. He at all times left some items of clothing, personal effects and papers on the ship. He did not seek to ascertain the sailing time on the occasion of this return visit. It is well settled that such facts create a presumption that the seaman did not intend to desert, but this presumption may be rebutted by express statements showing that he did not intend to return, or by other facts and circumstances spelling out such an intent. Norris on The Law of Seamen, Vol. 1, § 146, p. 167. The Court finds that, when petitioner left the ship on July 13 and thereafter returned on July 14, he had no present intention to desert the vessel. It is equally well settled that such an intention may be thereafter formed and therein lies the factual situation existing herein.

The first posted scheduled sailing was on July 14 at 11 A.M. Due to the absence of several of the crewmen, the resailing was posted on July 14 at 5 P.M., for sailing on July 15 at 10 A.M. In the interim the master ascertained the whereabouts of the crewmen, including petitioner. At 8 P.M. on July 14 the master visited a local hotel and went to petitioner's room. His conversation, according to the master, was entirely normal and petitioner did not appear to be intoxicated to any degree. After explaining to the seaman the consequences of his actions, the master was told that petitioner planned to return to Seattle by air, and that petitioner did not worry about his money as he would get it in due time. The seaman was seated in a chair reading a paper when located by the master; his appearance was neat, and his first inquiry was, "How did you find me?" The master, having failed in his efforts to persuade petitioner to return to the vessel, proceeded to leave the hotel and did not thereafter contact the seaman. The sailing was further delayed for a period of four hours on July 15 while one delinquent crew member returned to Honolulu to secure his clothes. Before sailing, petitioner was logged as a deserter.

 Drunkenness will not excuse desertion where the seaman has stated his intentions to desert or by his actions has unmistakably indicated such intention. The Mermaid, 9 Cir., 115 F. 13. Aside from this fact, the evidence does not disclose that petitioner was intoxicated to such an extent that he did not fully comprehend the nature of the master's visit at the hotel. While the burden rests upon the party asserting desertion to prove the requisite intent, where drunkenness is offered as an excuse, there is an equal burden upon the alleged deserter to establish his condition to such an extent that the ability to formulate the intent to desert is essentially negatived. To hold otherwise would permit a seaman charged with desertion to merely state that he was drunk and had no intention of not returning to the ship. Petition of Murphy, D.C., 73 F. Supp. 710; The Ericson, Fed.Cas.No. 4,510; Application of Mitchell, D.C., 84 F.Supp. 871.

The evidence of the petitioner submitted through a deposition appears to be vague and evasive. He has a peculiar recollection of certain facts deemed to be

advantageous to his legal position, but his memory lapses as to the master's visit to his hotel and the details of any conversation had with this individual. He recalls having seen the master on "the street" and conversing with him, but his only recollection of the conversation was that the captain wanted him to return to the ship "and go to work". Petitioner further insists that he telephoned the agent and was told that he could still reach the ship if he left immediately, but this was apparently at 11:30 A.M. on July 14 as indicated by the log entry. The master's hotel visit was later that same day, and the sailing was on the day following.

██ Forfeitures are not to be applied lightly but, by the same token, the prompt sailing of vessels is of vital importance to the maritime industry. If seamen are permitted to delay, without sufficient excuse, the scheduled sailing of a vessel, they must be prepared to accept the natural consequences of their acts. Under the facts of this case, it is the Court's conclusion that the acts of petitioner were deliberate and intentional, as well as in total disregard of the rights of the vessel.

██ It is suggested that petitioner is entitled to relief by reason of the decision of a Coast Guard Examiner holding that the seaman was guilty of "failing to join", but not guilty of "desertion". The only evidence presented to the Coast Guard was the testimony of the seaman and extracts from the log. The master did not testify. The Examiner obviously misinterpreted the log in concluding that the seaman had telephoned the agent on the day of sailing as this event took place on July 14, whereas the vessel did not sail until 2 P.M. on July 15. In any event, the findings by a Coast Guard Examiner with respect to desertion are not binding upon the Court. Petition of Sanuiti, D.C., 124 F.Supp. 69.

An order will be entered declaring petitioner's wages forfeited and providing payment into the Treasury of the United States as a part of the fund for the relief of sick and disabled and destitute seamen belonging to the United States merchant marine service. In the exercise of the Court's discretion, the clothes and effects are not forfeited, and shall be mailed by the Clerk to said seaman at such address as may be supplied by his counsel; the expense of mailing to be deducted from the forfeited wages as aforesaid. Petition of Jack E. Richardson, 1955 A.M.C. 842.